United States District Court
Eastern District of Virginia
Newport News Division

# Plaintiff: Lucille Y. Arrington

## v. Alabama Power Company and its parent Southern Company
file a case for disability discrimination and retaliation based on complaining of disability discrimination

This case is being filed in Federal Court because of the plaintiff's disability discrimination and retaliation based on complaining of disability discrimination which are against the Federal Retaliation and Whistle-Blowing laws.

1. The defendants retaliation against the plaintiff began on or about September 18th 2013 as a Supervisor in the Metro Central Business office under the same leadership as outlined throughout the claim. An employee with a close family relationship to Sr. Management and Executives of the defendants, was caught printing pornographic material during work hours on the office printer at Metro Central Business Office and the actions were captured on the defendants surveillance system. The employee with the close family relationship to Sr. Management and Executives then took the pornographic materials into the males restroom and gratified himself on the images and place them in the trash in plain site of others using the restroom. This violation took place twice in the same day and was reported to the plaintiff by one of her employees. The plaintiff followed policy and procedure outlined in the defendants policies for reporting such violations. When the defendant reported that employees expressed they were uncomfortableness working in an environment that included an individual allowed to commit such acts and receive no penalizing, the defendants leadership advised the plaintiff to let the situation go because management was handling it. The plaintiff followed the instruction given and referred any future employees to share their concern with the defendants management.

2. The plaintiff who was recognized as a stellar employee from the initial hiring on August 23rd 2010 – December 31st 2013 and was promoted by the Defendants was advised to report to 205 N Main Street Columbiana, AL 35051, a building owned by the defendants on or about January 6, 2014. On or about February 17th 2014 the plaintiff began complaining of a mildew odor in the office. The defendant changed air filters and placed air fresheners in the ducts. It was not until, on or about August 15th 2014, that someone was sent to test the air quality in the building. It was determined that an extreme case of toxic mold was present throughout the duct work and the highest concentration of the toxic mold was present in the plaintiff's office. All of the duct work, ceiling tiles and walls had to be removed. On or about September 2nd 2014 the plaintiff became uncontrollably ill within 10 minutes of entering the building at 205 N Main Street Columbiana, AL 35051 and had to seek medical treatment, unable to return to work until on or about September 29th 2014. Due to the daily toxic mold exposure (and at times required overnight sleeping) the plaintiff received a new diagnosis of Asthma requiring

daily prescription inhalers used multiple times a day, multiple prescription nasal sprays requiring daily use, multiple daily prescriptions for digestive issues, a prescribed breathing machine with albuterol required daily often multiple times per day, hair loss, headaches and insomnia. The defendants initially denied that there was toxic mold present, and did not respond to the plaintiff requests for a copy of the test results. Upon return to work the plaintiff was instructed by the defendants to return to 205 N Main Street Columbiana, AL 35051 where there was still toxic mold present and remediation of the building taking place. Again the plaintiff became uncontrollably ill requiring medical attention.

3. Upon return to work on or about October 1st 2014 the Defendants led the plaintiff to believe that the plaintiff was moved to a different work location due to the toxic mold having a negative impact on the the plaintiffs' health. On or about December 15th 2014 the defendant informed the plaintiff that she was being removed from her role as a Supervisor of a smaller office and offered the role of Assistant Manager of a larger office but would not receive any pay increase, could not apply for any other jobs, keep the title of Supervisor, and could not volunteer for P.R events during free time. When the plaintiff asked clarifying questions about being advised the reason for the move was due unhealthy work conditions of toxic mold exposure illnesses received on the job and the rights that were to be given up with the new position, the defendant rescinded the offer. On or about January 6th 2015 the plaintiff was then transferred to a different position at the corporate headquarters 600 N 18th Street Birmingham, AL 35203, 36 miles away from the plaintiffs' original work location of 205 N Main Street Columbiana with a new title of Sr. Information Analyst (Individual Contributor) from a Business Office Supervisor (Leading Others). This transfer negatively impacted the plaintiffs' quality of life with a new usual commute time of 1-1 ½ hours one way up from the usual commute time of 16-22 minutes one way. The plaintiff was then given 1 year in the role of Sr. Information Analyst to find a new position. The plaintiff applied for approximately 7-10 positions internally that her experience and education met or exceeded the basic requirements and was denied for each. The plaintiff also applied and was denied for multiple external positions in the highly corporate connected environment of Alabama and Georgia. Some of the internal positions request for Supervisor feedback were often ignored or yielded non favorable comments of defamation. The defendants encouraged the plaintiff to apply for lesser positions and informed the plaintiff that the other positions were for someone else.

4. The defendant attempted to force the plaintiff to file a fraudulent Sexual Harassment charge against another employee. When the plaintiff refused and reported the action to the Vice President, the defendant continued to create a hostile atmosphere of harassment and intentionally inflicted emotionally distress upon the plaintiff causing the asthma and other diagnosis to be aggravated. The defendants' failed to respond to the plaintiffs' emails requesting mediation and resolution to the harassment and intentional infliction of distress in the work environment.

5. The plaintiff was issued FMLA annually since the asthma diagnosis from the toxic mold exposure on the job starting on or about September 2nd 2014. On or about January 15th 2016 the plaintiff became ill at work and left to take medicine. Upon return to work the

    defendants requested that the plaintiff come into the conference room to meet with the Supervisor and HR Business Partner. The defendants informed the plaintiff that she had done a good job for them as documented in letters of accommodation and emails but was being demoted and offered a position in the training department under the same leadership to be effective January 23rd 2016. The defendants stated this was a good opportunity. The plaintiff requested to speak with someone in higher authority. No referral was given but informed of the right to file an employee concern. The plaintiff once again became ill during the meeting, due to the intentional emotional distress from the conversation of the unmerited action, and left for the remainder of the day. The plaintiff required medical attention following the meeting when the symptoms could not be controlled and was unable to return to work for 3 days.

6. The plaintiff attempted to contact her Supervisor on or about January 19th but was repeatedly forwarded to the Vice Presidents admin. The plaintiff submitted a request for a personal leave of absence. The defendants advised the plaintiff that employees on FMLA were not eligible for the benefit of a personal leave of absence causing the plaintiff more emotional distress. The defendants then asked the plaintiff to speak with Disability Management. The plaintiff followed the instruction to be further emotionally distressed by the Disability Management representative trying to encourage the plaintiff to state that she needed a medical leave of absence. The plaintiff referred back to the original submitted request and the leave policy on hand. The intentional infliction of emotional distress caused the plaintiff to have an asthma attack and ultimately led to a forced constructive termination via the plaintiffs resignation from the position of Sr. Information Analyst on January 20th 2016 and accepted by the defendants on January 21st 2016

**RELIEF**
Plaintiff Lucille Y. Arrington damages consist of:
Expenses for medical treatment including prescriptions, Future expenses for medical treatment including prescriptions, Loss of Wages including reduction in merit increases and PPP, Future loss of wages and earning capacity, emotional pain and suffering, future emotional pain and suffering, permanent injuries to lungs, digestive system and any other body organ or membrane that can be negatively impacted by toxic mold exposure that contribute to toxic mold syndrome, Defamation to her name and credibility, loss on sell of home, moving expenses, job seeking expenses including hotels for Career Fairs, mileage, vehicle maintenance and quality of life in the amount of $3.5 million dollars and reimbursement of all legal fees including filing, copies, depositions and future attorneys.

United States District Court
Eastern District of Virginia
Newport News Division

Plaintiff: Lucille Y. Arrington

v. Alabama Power Company and its parent Southern Company
file a case for disability discrimination and retaliation based on complaining of disability discrimination

This case is being filed in Federal Court because of the plaintiff's disability discrimination and retaliation based on complaining of disability discrimination which are against the Federal Retaliation and Whistle-Blowing laws.

1. The defendants retaliation against the plaintiff began on or about September 18th 2013 as a Supervisor in the Metro Central Business office under the same leadership as outlined throughout the claim. An employee with a close family relationship to Sr. Management and Executives of the defendants, was caught printing pornographic material during work hours on the office printer at Metro Central Business Office and the actions were captured on the defendants surveillance system. The employee with the close family relationship to Sr. Management and Executives then took the pornographic materials into the males restroom and gratified himself on the images and place them in the trash in plain site of others using the restroom. This violation took place twice in the same day and was reported to the plaintiff by one of her employees. The plaintiff followed policy and procedure outlined in the defendants policies for reporting such violations. When the defendant reported that employees expressed they were uncomfortableness working in an environment that included an individual allowed to commit such acts and receive no penalizing, the defendants leadership advised the plaintiff to let the situation go because management was handling it. The plaintiff followed the instruction given and referred any future employees to share their concern with the defendants management.

2. The plaintiff who was recognized as a stellar employee from the initial hiring on August 23rd 2010 – December 31st 2013 and was promoted by the Defendants was advised to report to 205 N Main Street Columbiana, AL 35051, a building owned by the defendants on or about January 6, 2014. On or about February 17th 2014 the plaintiff began complaining of a mildew odor in the office. The defendant changed air filters and placed air fresheners in the ducts. It was not until, on or about August 15th 2014, that someone was sent to test the air quality in the building. It was determined that an extreme case of toxic mold was present throughout the duct work and the highest concentration of the toxic mold was present in the plaintiff's office. All of the duct work, ceiling tiles and walls had to be removed. On or about September 2nd 2014 the plaintiff became uncontrollably ill within 10 minutes of entering the building at 205 N Main Street Columbiana, AL 35051 and had to seek medical treatment, unable to return to work until on or about September 29th 2014. Due to the daily toxic mold exposure (and at times required overnight sleeping) the plaintiff received a new diagnosis of Asthma requiring

daily prescription inhalers used multiple times a day, multiple prescription nasal sprays requiring daily use, multiple daily prescriptions for digestive issues, a prescribed breathing machine with albuterol required daily often multiple times per day, hair loss, headaches and insomnia. The defendants initially denied that there was toxic mold present, and did not respond to the plaintiff requests for a copy of the test results. Upon return to work the plaintiff was instructed by the defendants to return to 205 N Main Street Columbiana, AL 35051 where there was still toxic mold present and remediation of the building taking place. Again the plaintiff became uncontrollably ill requiring medical attention.

3. Upon return to work on or about October 1st 2014 the Defendants led the plaintiff to believe that the plaintiff was moved to a different work location due to the toxic mold having a negative impact on the the plaintiffs' health. On or about December 15th 2014 the defendant informed the plaintiff that she was being removed from her role as a Supervisor of a smaller office and offered the role of Assistant Manager of a larger office but would not receive any pay increase, could not apply for any other jobs, keep the title of Supervisor, and could not volunteer for P.R events during free time. When the plaintiff asked clarifying questions about being advised the reason for the move was due unhealthy work conditions of toxic mold exposure illnesses received on the job and the rights that were to be given up with the new position, the defendant rescinded the offer. On or about January 6th 2015 the plaintiff was then transferred to a different position at the corporate headquarters 600 N 18th Street Birmingham, AL 35203, 36 miles away from the plaintiffs' original work location of 205 N Main Street Columbiana with a new title of Sr. Information Analyst (Individual Contributor) from a Business Office Supervisor (Leading Others). This transfer negatively impacted the plaintiffs' quality of life with a new usual commute time of 1-1 ½ hours one way up from the usual commute time of 16-22 minutes one way. The plaintiff was then given 1 year in the role of Sr. Information Analyst to find a new position. The plaintiff applied for approximately 7-10 positions internally that her experience and education met or exceeded the basic requirements and was denied for each. The plaintiff also applied and was denied for multiple external positions in the highly corporate connected environment of Alabama and Georgia. Some of the internal positions request for Supervisor feedback were often ignored or yielded non favorable comments of defamation. The defendants encouraged the plaintiff to apply for lesser positions and informed the plaintiff that the other positions were for someone else.

4. The defendant attempted to force the plaintiff to file a fraudulent Sexual Harassment charge against another employee. When the plaintiff refused and reported the action to the Vice President, the defendant continued to create a hostile atmosphere of harassment and intentionally inflicted emotionally distress upon the plaintiff causing the asthma and other diagnosis to be aggravated. The defendants' failed to respond to the plaintiffs' emails requesting mediation and resolution to the harassment and intentional infliction of distress in the work environment.

5. The plaintiff was issued FMLA annually since the asthma diagnosis from the toxic mold exposure on the job starting on or about September 2nd 2014. On or about January 15th 2016 the plaintiff became ill at work and left to take medicine. Upon return to work the

    defendants requested that the plaintiff come into the conference room to meet with the Supervisor and HR Business Partner. The defendants informed the plaintiff that she had done a good job for them as documented in letters of accommodation and emails but was being demoted and offered a position in the training department under the same leadership to be effective January 23rd 2016. The defendants stated this was a good opportunity. The plaintiff requested to speak with someone in higher authority. No referral was given but informed of the right to file an employee concern. The plaintiff once again became ill during the meeting, due to the intentional emotional distress from the conversation of the unmerited action, and left for the remainder of the day. The plaintiff required medical attention following the meeting when the symptoms could not be controlled and was unable to return to work for 3 days.

6. The plaintiff attempted to contact her Supervisor on or about January 19th but was repeatedly forwarded to the Vice Presidents admin. The plaintiff submitted a request for a personal leave of absence. The defendants advised the plaintiff that employees on FMLA were not eligible for the benefit of a personal leave of absence causing the plaintiff more emotional distress. The defendants then asked the plaintiff to speak with Disability Management. The plaintiff followed the instruction to be further emotionally distressed by the Disability Management representative trying to encourage the plaintiff to state that she needed a medical leave of absence. The plaintiff referred back to the original submitted request and the leave policy on hand. The intentional infliction of emotional distress caused the plaintiff to have an asthma attack and ultimately led to a forced constructive termination via the plaintiffs resignation from the position of Sr. Information Analyst on January 20th 2016 and accepted by the defendants on January 21st 2016

**RELIEF**
Plaintiff Lucille Y. Arrington damages consist of:
Expenses for medical treatment including prescriptions, Future expenses for medical treatment including prescriptions, Loss of Wages including reduction in merit increases and PPP, Future loss of wages and earning capacity, emotional pain and suffering, future emotional pain and suffering, permanent injuries to lungs, digestive system and any other body organ or membrane that can be negatively impacted by toxic mold exposure that contribute to toxic mold syndrome, Defamation to her name and credibility, loss on sell of home, moving expenses, job seeking expenses including hotels for Career Fairs, mileage, vehicle maintenance and quality of life in the amount of $3.5 million dollars and reimbursement of all legal fees including filing, copies, depositions and future attorneys.

Plaintiff: Lucille Y. Arrington

v. Alabama Power Company and its parent Southern Company
file a case for disability discrimination and retaliation based on complaining of disability discrimination

This case is being filed in Federal Court because of the plaintiff's disability discrimination and retaliation based on complaining of disability discrimination which are against the Federal Retaliation and Whistle-Blowing laws.

1. The defendants retaliation against the plaintiff began on or about September 18th 2013 as a Supervisor in the Metro Central Business office under the same leadership as outlined throughout the claim. An employee with a close family relationship to Sr. Management and Executives of the defendants, was caught printing pornographic material during work hours on the office printer at Metro Central Business Office and the actions were captured on the defendants surveillance system. The employee with the close family relationship to Sr. Management and Executives then took the pornographic materials into the males restroom and gratified himself on the images and place them in the trash in plain site of others using the restroom. This violation took place twice in the same day and was reported to the plaintiff by one of her employees. The plaintiff followed policy and procedure outlined in the defendants policies for reporting such violations. When the defendant reported that employees expressed they were uncomfortableness working in an environment that included an individual allowed to commit such acts and receive no penalizing, the defendants leadership advised the plaintiff to let the situation go because management was handling it. The plaintiff followed the instruction given and referred any future employees to share their concern with the defendants management.

2. The plaintiff who was recognized as a stellar employee from the initial hiring on August 23rd 2010 – December 31st 2013 and was promoted by the Defendants was advised to report to 205 N Main Street Columbiana, AL 35051, a building owned by the defendants on or about January 6, 2014. On or about February 17th 2014 the plaintiff began complaining of a mildew odor in the office. The defendant changed air filters and placed air fresheners in the ducts. It was not until, on or about August 15th 2014, that someone was sent to test the air quality in the building. It was determined that an extreme case of toxic mold was present throughout the duct work and the highest concentration of the toxic mold was present in the plaintiff's office. All of the duct work, ceiling tiles and walls had to be removed. On or about September 2nd 2014 the plaintiff became uncontrollably ill within 10 minutes of entering the building at 205 N Main Street Columbiana, AL 35051 and had to seek medical treatment, unable to return to work until on or about September 29th 2014. Due to the daily toxic mold exposure (and at times required overnight sleeping) the plaintiff received a new diagnosis of Asthma requiring

daily prescription inhalers used multiple times a day, multiple prescription nasal sprays requiring daily use, multiple daily prescriptions for digestive issues, a prescribed breathing machine with albuterol required daily often multiple times per day, hair loss, headaches and insomnia. The defendants initially denied that there was toxic mold present, and did not respond to the plaintiff requests for a copy of the test results. Upon return to work the plaintiff was instructed by the defendants to return to 205 N Main Street Columbiana, AL 35051 where there was still toxic mold present and remediation of the building taking place. Again the plaintiff became uncontrollably ill requiring medical attention.

3. Upon return to work on or about October 1st 2014 the Defendants led the plaintiff to believe that the plaintiff was moved to a different work location due to the toxic mold having a negative impact on the the plaintiffs' health. On or about December 15th 2014 the defendant informed the plaintiff that she was being removed from her role as a Supervisor of a smaller office and offered the role of Assistant Manager of a larger office but would not receive any pay increase, could not apply for any other jobs, keep the title of Supervisor, and could not volunteer for P.R events during free time. When the plaintiff asked clarifying questions about being advised the reason for the move was due unhealthy work conditions of toxic mold exposure illnesses received on the job and the rights that were to be given up with the new position, the defendant rescinded the offer. On or about January 6th 2015 the plaintiff was then transferred to a different position at the corporate headquarters 600 N 18th Street Birmingham, AL 35203, 36 miles away from the plaintiffs' original work location of 205 N Main Street Columbiana with a new title of Sr. Information Analyst (Individual Contributor) from a Business Office Supervisor (Leading Others). This transfer negatively impacted the plaintiffs' quality of life with a new usual commute time of 1-1 ½ hours one way up from the usual commute time of 16-22 minutes one way. The plaintiff was then given 1 year in the role of Sr. Information Analyst to find a new position. The plaintiff applied for approximately 7-10 positions internally that her experience and education met or exceeded the basic requirements and was denied for each. The plaintiff also applied and was denied for multiple external positions in the highly corporate connected environment of Alabama and Georgia. Some of the internal positions request for Supervisor feedback were often ignored or yielded non favorable comments of defamation. The defendants encouraged the plaintiff to apply for lesser positions and informed the plaintiff that the other positions were for someone else.

4. The defendant attempted to force the plaintiff to file a fraudulent Sexual Harassment charge against another employee. When the plaintiff refused and reported the action to the Vice President, the defendant continued to create a hostile atmosphere of harassment and intentionally inflicted emotionally distress upon the plaintiff causing the asthma and other diagnosis to be aggravated. The defendants' failed to respond to the plaintiffs' emails requesting mediation and resolution to the harassment and intentional infliction of distress in the work environment.

5. The plaintiff was issued FMLA annually since the asthma diagnosis from the toxic mold exposure on the job starting on or about September 2nd 2014. On or about January 15th 2016 the plaintiff became ill at work and left to take medicine. Upon return to work the

    defendants requested that the plaintiff come into the conference room to meet with the Supervisor and HR Business Partner. The defendants informed the plaintiff that she had done a good job for them as documented in letters of accommodation and emails but was being demoted and offered a position in the training department under the same leadership to be effective January 23rd 2016. The defendants stated this was a good opportunity. The plaintiff requested to speak with someone in higher authority. No referral was given but informed of the right to file an employee concern. The plaintiff once again became ill during the meeting, due to the intentional emotional distress from the conversation of the unmerited action, and left for the remainder of the day. The plaintiff required medical attention following the meeting when the symptoms could not be controlled and was unable to return to work for 3 days.

6. The plaintiff attempted to contact her Supervisor on or about January 19th but was repeatedly forwarded to the Vice Presidents admin. The plaintiff submitted a request for a personal leave of absence. The defendants advised the plaintiff that employees on FMLA were not eligible for the benefit of a personal leave of absence causing the plaintiff more emotional distress. The defendants then asked the plaintiff to speak with Disability Management. The plaintiff followed the instruction to be further emotionally distressed by the Disability Management representative trying to encourage the plaintiff to state that she needed a medical leave of absence. The plaintiff referred back to the original submitted request and the leave policy on hand. The intentional infliction of emotional distress caused the plaintiff to have an asthma attack and ultimately led to a forced constructive termination via the plaintiffs resignation from the position of Sr. Information Analyst on January 20th 2016 and accepted by the defendants on January 21st 2016

**RELIEF**
Plaintiff Lucille Y. Arrington damages consist of:
Expenses for medical treatment including prescriptions, Future expenses for medical treatment including prescriptions, Loss of Wages including reduction in merit increases and PPP, Future loss of wages and earning capacity, emotional pain and suffering, future emotional pain and suffering, permanent injuries to lungs, digestive system and any other body organ or membrane that can be negatively impacted by toxic mold exposure that contribute to toxic mold syndrome, Defamation to her name and credibility, loss on sell of home, moving expenses, job seeking expenses including hotels for Career Fairs, mileage, vehicle maintenance and quality of life in the amount of $3.5 million dollars and reimbursement of all legal fees including filing, copies, depositions and future attorneys.

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

Arrington, Lucille Y. )
*Plaintiff* )
v. ) Civil Action No.
Alabama Power Company, and Southern Company )
*Defendant* )

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: Alabama Power Company 600 18 th. St N.  Birmingham, AL 35203 , and Southern Company 30 Ivan Allen Jr. Blvd. N
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within __30__ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: April 15, 2016

*Signature of the attorney or unrepresented party*

Lucille Y. Arrington
*Printed name*

2502 Carriage House Way
Williamsburg, VA 23188
*Address*

lucille.arrington@gmail.com
*E-mail address*

205-614-2747
*Telephone number*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Virginia

| | | |
|---|---|---|
| Lucille Y. Arrington<br>2502 Carriage House Way<br>Williamsburg, VA 23188<br><br>*Plaintiff(s)*<br>v.<br>Alabama Power Company and<br>600 18 th. St N. Birmingham, AL 35203 , and Southern Company  30 Ivan Allen Jr. Blvd. NW Atlanta, GA 30308<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Alabama Power Company
600 18 th. St N. Birmingham, AL 35203 , and
Southern Company
30 Ivan Allen Jr. Blvd. NW Atlanta, GA 30308

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____   _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* Alabama Power Company 600 18 th. St N. Birmingham, AL 352

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | | |
|---|---|---|
| Arrington, Lucille Y. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Alabama Power Company, and Southern Company | ) | |
| *Defendant* | ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To: Lucille Y. Arrington
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

    I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

    I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

    I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

    I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____April 15, 2016_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

    Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

    "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

    If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

    If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

EEOC Form 161 (11/09)      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Lucille Arrington<br>561 Harlem Avenue<br>Hueytown, AL 35023 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street<br>Birmingham, AL 35205 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2016-01036 | Debra Powell,<br>Investigator | (205) 212-2085 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>**more than 2 years (3 years)**</u> <u>before you file suit may not be collectible.</u>

Enclosures(s)     On behalf of the Commission

Delner Franklin-Thomas,
District Director

2/3/2016 (Date Mailed)

cc:   **Alabama Power Company**
c/o Mark Crosswhite, President and CEO
600 North 18th Street
Birmingham, AL 35203

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>420-2016-01036 |
|---|---|---|

and EEOC
_____
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.)<br>**Ms. Lucille Arrington** | Home Phone (Incl. Area Code)<br>**(205) 614-2747** | Date of Birth<br>**11-08-1969** |
|---|---|---|

Street Address                                  City, State and ZIP Code
**561 Harlem Avenue, Hueytown, AL 35023**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**ALABAMA POWER** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(205) 257-1000** |
|---|---|---|

Street Address                                  City, State and ZIP Code
**600 N 18th Street, Birmingham, AL 35203**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address                                  City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **01-19-2016**   Latest: **01-20-2016**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am Black. I am also an individual with a disability. I filed a previous charge (420-2015-02570) of discrimination against the above named employer on January 19, 2016. I have been approved for intermittent Family Medical Leave (FML) since October 2014. On January 19, 2016, I spoke to Supervisor Scott Cotney (White) and requested a personal leave of absence because the stressful work environment aggravated my disability. Mr. Cotney informed me that employees with FML could not take a personal leave of absence. Mr. Cotney then referred me to TINA LNU, who works in the Disability Management Office. Tina asked me questions that related to my disability and questions that were not related to my personal leave request.

On January 20, 2016, I e-mailed members of management informing them of my decision to resign. My resignation was acknowledged and was effective January 21, 2016.

I believe that I have been subjected to discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended. I also believe that I have been subjected to discrimination because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>Feb 01, 2016                     [signature]<br>Date                Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT    RECEIVED<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)   FEB - 1 2016<br><br>E.E.O.C.<br>BIRMINGHAM DISTRICT |

EEOC Form 161 (11/09) **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Lucille Arrington
561 Harlem Avenue
Hueytown, AL 35023

From: Birmingham District Office
Ridge Park Place
1130 22nd Street
Birmingham, AL 35205

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2015-02570 | Debra Powell, Investigator | (205) 212-2085 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Delner Franklin-Thomas,
District Director

1/20/2016
(Date Mailed)

Enclosures(s)

cc: Alabama Power Company
c/o Mark Crosswhite, President and CEO
600 North 18th Street
Birmingham, AL 35203

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>420-2015-02570 |
|---|---|---|

and EEOC
_____
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.)<br>**Ms. Lucille Arrington** | Home Phone (Incl. Area Code)<br>**(205) 614-2747** | Date of Birth<br>**11-08-1969** |
|---|---|---|

Street Address
**561 Harlem Avenue, Hueytown, AL 35023**     City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**ALABAMA POWER CORPORATE** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(205) 257-1000** |
|---|---|---|

Street Address
**600 North 18th Street, Birmingham, AL 35203**     City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address     City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-05-2014**   Latest **12-01-2015**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired to work for the above named employer on August 23, 2010. In May 2013, I was promoted to the position of Business Office Supervisor by Customer Service Manager Scott Cotney. In November 2014, Mr. Cotney informed me that I would be transferred from the Metro Central Business Office to the Columbiana Business Office so that I could gain small office experience. In February 2014, I complained that there was a mildew smell in the workplace. It was later determined that the smell was being caused by toxic mold. During my time in the Columbiana Business Office, I was subjected to a hostile work environment by my subordinate employees. I complained to Area Manager Ashley Robinette who said that she would speak to the employees, but the hostile work environment continued.

While performing my supervisory duties in the Pelham Office, I was subjected to scrutiny by Terri Tucker and Tim Bowen. My midyear performance evaluation indicated that I needed improvement. In December 2014, Ms. Robinette offered me an Assistant Manager position and stated that I would retain the pay and title of Business Office Supervisor. After considering the offer, I informed Ms. Robinette that I wanted the position. After questioning my leadership ability, Ms. Robinette rescinded the offer. In January 2015, Ms. Robinette informed me that I was being transferred to the Corporate Office, where Mr. Cotney excluded me from meetings and ignored me. Mr. Cotney also tried to force me to file a sexual harassment complaint although the complaint did not have merit.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

**Jan 19, 2016**
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

RECEIVED
SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
**JAN 19 2016**
E.E.O.C.
BIRMINGHAM DISTRICT

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>420-2015-02570<br>and EEOC |
|---|---|---|

State or local Agency, if any

In 2015, I applied for seven positions, but I was not selected. The positions were awarded to a Black Male, a Black Female, and a White Female. On January 15, 2016, Mr. Cotney informed me that I would be demoted to the position of Training Analyst IV position beginning January 25, 2015.

I believed that I am being demoted in retaliation for complaining of a hostile work environment and because I reported toxic mold.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Jan 19, 2016
Date                Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT    RECEIVED

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)    JAN 19 2016

E.E.O.C.
BIRMINGHAM DISTRICT

5

## CERTIFICATION

I declare under penalty of perjury that:

(1) No attorney has prepared, or assisted in the preparation of this document

Lucille Y Arrington
Name of *Pro Se* Party (Print or Type)

Signature of *Pro Se* Party

Executed on: 18 April 2016 (Date)

OR

(2) _____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of this document.

_____
(Name of *Pro Se* Party (Print or Type))

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)

5

**(M) Ghostwriting:**
(1) Any attorney who prepares any document that is to be filed in this Court by a person who is known by the attorney, or who is reasonably expected by the attorney, to be proceeding *pro se*, shall be considered to have entered an appearance in the proceeding in which such document is filed and shall be subject to all rules that govern attorneys who have formally appeared in the proceeding.
(2) All litigants who are proceeding *pro se* shall certify in writing and under penalty of perjury that a document(s) filed with the Court has not been prepared by, or with the aid of, an attorney or shall identify any attorney who has prepared, or assisted in preparing, the document.

**Each document filed with the court by a *pro se* litigant shall bear the following certification:**

**CERTIFICATION**

I declare under penalty of perjury that:
(1) No attorney has prepared, or assisted in the preparation of this document.

Lucille Y Arrington
Name of *Pro Se* Party (Print or Type)

[signature]
Signature of *Pro Se* Party
Executed on: 4/18/16 (Date)

OR

**CERTIFICATION**

2) _____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party
Executed on: _____ (Date)