# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LUCILLE YVETTE ARRINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:16-cv-01355-JEO |
| ) | |
| ALABAMA POWER COMPANY and ) | |
| its parent company SOUTHERN ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In this employment discrimination action, plaintiff Lucille Yvette Arrington, acting *pro se*, has sued Alabama Power Company and The Southern Company (collectively, the "Defendants") for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). The Defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. 14). They have also filed a motion to stay all discovery pending the Court's ruling on their motion to dismiss. (Doc. 25). Arrington opposes both motions. (Docs. 17 & 27). For the reasons that follow, the court will grant the Defendants' motion to dismiss but will allow Arrington an

opportunity to replead her claims against Alabama Power in an amended complaint. The Court will also grant the Defendants' motion to stay discovery.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. On such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). In considering a motion to dismiss, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).

Rule 12(b)(6) is read in light of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## ARRINGTON'S CLAIMS

Arrington is a former employee of Alabama Power. She initiated this action by completing and filing a form "Complaint for a Civil Case" against Alabama Power and its parent company, The Southern Company. (Doc. 1). In the form complaint, Arrington alleges that the Defendants "violated [her] Civil Rights under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990." (Doc. 1 at 2). Attached to the form complaint (along with other attachments) is a six-paragraph narrative complaint setting forth the facts on which her claims are based. (Doc. 1-1 at 1-3).

In her narrative complaint, Arrington first explains that she filed her case "because of [her] disability discrimination and retaliation based on complaining of disability discrimination which are against the Federal Retaliation and Whistle-Blowing laws." (Doc. 1-1 at 1). She then alleges that the retaliation began in September 2013 when she was employed as a Supervisor in Alabama Power's Metro Central Business office and reported to her "leadership" that another employee possessed pornographic materials in the workplace. She was advised to "let the situation go" because management was handling it. (Doc. 1-1 at ¶ 1).

Arrington was promoted at the end of 2013 and was assigned to an Alabama Power office in Columbiana, Alabama. In February 2014, Arrington began complaining about a "mildew odor" in the office. In response to her complaints, Alabama Power replaced the air filters and placed air fresheners in the ducts. In August 2014, it was determined that there was "toxic mold" throughout the duct work, and all of the duct work, ceiling tiles, and walls had to be removed. Arrington became ill in September 2014 and was diagnosed with asthma caused by her "daily toxic mold exposure." (*Id.* at ¶ 2).

Arrington's next allegations are somewhat confusing and hard to follow. As best as the court can determine, in late 2014 Alabama Power offered to transfer Arrington to a larger office in an effort to accommodate her "toxic mold exposure illnesses." She was told that she would be an Assistant Manager (rather than a

4

Supervisor) of the larger office but would not receive a pay increase. According to Arrington, Alabama Power rescinded the offer when she asked questions about the "rights" she would be giving up with the new position. Instead of transferring Arrington to the larger office, Alabama Power transferred her to its corporate headquarters in Birmingham, where she was given the position of Senior Information Analyst. According to Arrington, the transfer "negatively impacted" her quality of life because her commute to work was longer. After being transferred, Arrington was informed that she had one year to find a new position. Although she applied for multiple internal and external positions, her efforts to find a new position were unsuccessful. (*Id.* at ¶ 3).

Arrington next alleges that Alabama Power attempted to force her to file a fraudulent Sexual Harassment charge against another employee.[1] She refused to file the charge and reported the matter to an Alabama Power Vice President. According to Arrington, she was then subjected to a "hostile atmosphere of harassment," which caused her emotional distress and aggravated her asthma. (*Id.* at ¶ 4).

On or about January 15, 2016, the "Supervisor and HR Business Partner" in the Birmingham corporate office informed Arrington that she was being demoted and would be transferred to the training department effective January 23, 2016.

---

[1] It is unclear when this alleged incident occurred.

Arrington became ill upon learning this news, left work, and could not return to work for three days. (*Id.* at ¶ 6).

Since first being diagnosed with asthma in September 2014, Arrington had been taking annual leave under the Family and Medical Leave Act of 1993 ("FMLA"). (*Id.* at ¶ 4). On or about January 19, 2016, Arrington submitted a request for a personal leave of absence from work, but was advised that employees on FMLA leave were not eligible for personal leave, which caused her more emotional distress. She was referred to a Disability Management representative, who encouraged her to request a medical leave of absence. According to Arrington, this "intentional infliction of emotional distress" caused her to have an asthma attack and led her to resign from her employment on January 20, 2016. She considers her resignation to be a "forced constructive termination." (*Id.* at ¶ 6).

Prior to bringing this action, Arrington filed two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] She filed her first EEOC charge on January 19, 2016, and identified Alabama Power as her employer. (Doc. 1-1 at 17). She checked the box for discrimination based on "retaliation" and stated that she believed she was being demoted "in retaliation for complaining of a hostile work environment and because [she] reported toxic mold." (*Id.* at 17-18). Arrington filed her second EEOC charge on February 1,

---

[2] The two EEOC charges are attached to Arrington's complaint. (*See* Doc. 1-1 at 15 & 17-18).

2016, and again identified Alabama Power as her employer. (*Id.* at 15).  She checked the boxes for discrimination based on "retaliation" and "disability" and alleged that she had been "subjected to discrimination and retaliation in violation of the [ADA]" and had been "subjected to discrimination because of [her] race (Black) in violation of Title VII …." (*Id.*)

## ANALYSIS

In their motion to dismiss, the Defendants argue that (1) Arrington's complaint does not allege a violation of either Title VII or the ADA and (2) in any event, The Southern Company is due to be dismissed as a defendant.  The Court will first consider the Defendants' argument that The Southern Company should be dismissed, and will then turn to their argument that the complaint fails to state a claim under either Title VII or the ADA.

**A.    The Southern Company is not a proper defendant.**

The Court agrees that The Southern Company is due to be dismissed from this action.  Arrington's complaint merely alleges that The Southern Company is Alabama Power's "parent"; there is no allegation in the complaint that The Southern Company was Arrington's employer.  Indeed, as noted above, both of

Arrington's EEOC charges identify Alabama Power as her employer. Neither charge mentions The Southern Company.[3]

In addition, it is well-settled that before an individual may pursue a Title VII claim or an ADA claim, she must first exhaust her administrative remedies by filing an EEOC charge. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies. The first step down this path is filing a timely charge of discrimination with the EEOC." (internal citation omitted)); *Butler v. Greif, Inc.*, 325 F. App'x 748, 749 (11th Cir. 2009) ("Before filing suit under the ADA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC."). Arrington did not file an EEOC charge against The Southern Company before commencing her lawsuit. Therefore, she cannot pursue her claims against The Southern Company here. The Southern Company in not a proper defendant and is entitled to be dismissed from this action with prejudice.

---

[3] In Arrington's response to the Defendants' motion to dismiss, she states that "The Southern Company and its' [sic] employee, Jeff Peoples, were named in the EEOC charges …." (Doc. 17 at 11). That is not accurate. Neither The Southern Company nor Jeff Peoples is named in either of Arrington's EEOC charges.

## B.     The complaint does not state a claim under Title VII or the ADA.

### 1.     Title VII

Title VII prohibits employment discrimination against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, Arrington's complaint does not identify any alleged acts of discrimination that were taken because of her race, color, religion, sex, or national origin. In fact, as noted above, her narrative description of the facts underlying her claims opens with the statement that she has sued the Defendants for "disability discrimination" and retaliation for "complaining [about] disability discrimination," not for discrimination based on race, sex, or some other protected category. The allegations that follow relate to her reporting of another employee's possession of pornographic materials in the workplace; her complaints about a mildew odor in the office and the effects of toxic mold exposure on her health; Alabama Power's decision to transfer her to the Birmingham corporate office; Alabama Power's alleged efforts to get her to file a fraudulent sexual harassment charge against another employee; Alabama Power's decision to demote her to the training department; and Alabama Power's refusal to grant her a personal leave of absence. Arrington does not tie *any* of these alleged acts to her race, sex, or other protected category. She does not even mention her race or her sex

9

anywhere in her complaint. Simply put, there is nothing in the complaint that gives rise to a claim for violation of Title VII.

In her response in opposition to the Defendants' motion to dismiss, Arrington asserts that her allegations "do state a claim under … Title VII's 'opposition' clause in the form of [r]etaliation." (Doc. 17 at 20). Title VII prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice" by Title VII (the "opposition clause") or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII (the "participation clause"). 42 U.S.C. § 2000e-3(a). To establish a retaliation claim under Title VII, "a plaintiff must prove that [she] engaged in statutorily protected activity, [she] suffered a materially adverse action, and there was some causal relation between the two events." *Burlington v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

Even giving Arrington the benefit of all reasonable factual inferences, the allegations in her complaint do not state a claim of retaliation under Title VII. The Court first notes, again, that the only form of retaliation mentioned in her complaint is alleged retaliation for complaining about disability discrimination; there is no allegation that the Defendants retaliated against her for opposing discrimination under Title VII. Likewise, neither of Arrington's EEOC charges

10

references Title VII retaliation. Her initial EEOC charge alleges that she was demoted in retaliation for complaining about a hostile work environment and reporting toxic mold, not for opposing race, sex, or other discrimination prohibited by Title VII. Her second EEOC charge does allege that she was subjected to discrimination because of her race, but does not allege that she engaged in any form of protected activity or that Alabama Power retaliated against her for opposing race discrimination. The only form of retaliation referenced in her second EEOC charge is ADA retaliation.

Moreover, none of the allegations in Arrington's complaint relate to race or sex discrimination or to her opposition to such discrimination. She does not identify a single instance in which she complained about or opposed an alleged act of discrimination prohibited by Title VII, much less that the Defendants retaliated against her for voicing such opposition. There are no facts alleged in Arrington's complaint that would allow even an inference of Title VII retaliation.

For all of these reasons, Arrington's complaint does not state a claim against the Defendants for violation of Title VII.

### 2. The ADA

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of a disability in regard to job application procedures; the hiring, advancement, or discharge of employees; employee compensation; job training;

and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F3d 1264, 1268 (11th Cir. 2014) (citing *Holly v. Clairson Industries, LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007)).

Like Title VII, the ADA prohibits retaliation against an employee who has "opposed any act or practice made unlawful by" the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA. 42 U.S.C. § 12203(a). The Eleventh Circuit "asses[es] ADA retaliation claims under the same framework used in Title VII." *Palmer v. McDonald*, 624 F. App'x 699, 702 (11th Cir. 2015) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)). To establish a prima facie case of ADA retaliation, a plaintiff must demonstrate that "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).

Here, Arrington does allege in her complaint that she was subjected to both disability discrimination and retaliation for complaining about disability discrimination. However, the facts she has alleged in the complaint are insufficient

to state a claim for either ADA discrimination or ADA retaliation. As pleaded by Arrington, the facts establish that Arrington complained about mildew and toxic mold exposure in the Columbiana office and that Alabama Power endeavored to remediate the problem and accommodate her adverse reaction to the mold, first by replacing the air filters, then by removing the duct work, ceiling tiles, and walls in the office, and finally by transferring her to the Birmingham corporate office. Furthermore, the alleged facts reflect only that Arrington complained about mildew and mold exposure, not that she complained about or opposed disability discrimination. Indeed, Arrington argues in her opposition to the Defendants' motion to dismiss that she "did actually complain about disability discrimination due to the 'toxic mold exposure' to a diverse group of recipients …." (Doc. 17 at 11). A complaint about toxic mold exposure, however, is not a complaint about disability discrimination, but rather a complaint about an alleged workplace hazard. Such a complaint is not protected activity under the ADA.

Accordingly, Arrington has failed to state a claim against the Defendants under the ADA.

### 3. Leave to Amend

As discussed above, The Southern Company is not a proper defendant in this action and Arrington's claims against The Southern Company are due to be dismissed with prejudice. With respect to Alabama Power, however, the Court

will give Arrington, who is proceeding *pro se*, leave to amend her claims instead of dismissing them with prejudice. *See Watkins v. Hudson*, 560 F. App'x 908, 911 (11th Cir. 2014) ("When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the plaintiff an opportunity to amend his complaint instead of dismissing it."). In exercising its discretion in this manner, the Court notes that Arrington's response in opposition to the Defendants' motion to dismiss contains a number of factual allegations that are not contained in her complaint. Without commenting on whether any of these allegations would be sufficient to state a claim against Alabama Power under Title VII or the ADA, the Court cannot say with certainty that allowing Arrington to amend her complaint against Alabama Power would be futile. She should be afforded an opportunity to do so.[4]

### 4. The Defendants' Motion to Stay Discovery will be granted.

Because the Court has determined that Arrington's complaint does not state a claim under either Title VII or the ADA but that Arrington should be allowed an opportunity to file an amended complaint against Alabama Power, the Defendants'

---

[4] In filing her amended complaint against Alabama Power, Arrington should take note of two rules of pleading. First, Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R Civ. P. 8(a)(2). Second, Rule 10(b) provides that a party "must state [her] claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Arrington's amended complaint needs to comply with these rules.

motion to stay will be granted.  All discovery in this action will be stayed pending Arrington's filing of an amended complaint against Alabama Power.

## CONCLUSION

Based on the above, Arrington's claims against The Southern Company will be dismissed with prejudice, while her claims against Alabama Power will be dismissed without prejudice.  Arrington will be afforded 21 days to restate her claims against Alabama Power in an amended complaint.  The Defendants' motion to stay discovery will be granted.  A separate order consistent with this opinion will be entered.

The Clerk is directed to mail a copy of this opinion to Plaintiff Lucille Yvette Arrington.

DATED, this 18th day of January, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge